* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Hall with minor modifications.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An Employer-Employee relationship existed between Plaintiff and Defendant.
3. The carrier liable on the risk is correctly named above.
4. The parties stipulated to an average weekly wage of $190.24 at the hearing just prior to calling the first witness.
5. On August 12, 1998, Plaintiff sustained a compensable injury by accident.
6. Plaintiff's injury arose out of and in the course of employment and is compensable.
7. The issues for determination are as follows:
 (a) Whether the Plaintiff's current symptomatology in her neck, right arm and right hand, and her treatment in connection therewith, is related to her compensable injury to her right hand on August 12, 1998;
 (b) Whether the Plaintiff sustained any disability as a result of her compensable injury to her right hand on August 12, 1998;
 (c) Whether the Defendants should be sanctioned for a violation of Industrial Commission Rule 601; and
 (d) Whether the Defendants are entitled to reasonable attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 due to the Plaintiff's unfounded and stubborn litigiousness.
 * * * * * * * * * * * *Page 3 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 44 years old at the time of hearing before the Deputy Commissioner, with a high school education and an Associates Degree in Early Childhood Development.
2. Defendant is a temporary staffing service that provided temporary employees to various businesses. Plaintiff became employed with Defendant on or about January 19, 1998.
3. From January 19, 1998 through August 12, 1998, Plaintiff held a temporary position as an assembler at Cutler Hammer through the Defendants.
4. On or about August 12, 1998, Plaintiff sustained a compensable injury by accident to her right hand, and specifically her middle, ring and pinky fingers, when her hand got caught in a fan that was sitting on her worktable. The fan did not strike any part of Plaintiff's right arm above the wrist. Although Plaintiff testified at the hearing that she injured her neck when she jerked her hand and arm away from the fan, Plaintiff's testimony in this regard is given little weight by the Full Commissions for the reasons outlined herein.
5. Plaintiff immediately reported her right hand injury to a co-worker at Cutler Hammer, but did not claim or mention any other injuries, including a neck injury, at that time.
6. Plaintiff was initially treated by the plant nursing assistant at Cutler Hammer on the day of the injury. The nursing assistant's treatment consisted only of cleaning and bandaging the Plaintiff's right hand. There is no evidence that Plaintiff claimed or reported any other injuries, including a neck injury, to the nursing assistant.
7. After being treated by the nursing assistant, Plaintiff returned to work and completed the remainder of her shift at Cutler Hammer. *Page 4 
8. The following day, Plaintiff reported her hand injury to her supervisor at Cutler Hammer. There is no evidence that the Plaintiff reported any other injuries, including a neck injury, to her supervisor at this time.
9. Plaintiff subsequently reported her hand injury to Defendant that same day. Plaintiff did not report any other injuries, including a neck injury, to Defendant. Although Defendants did not file an Industrial Commission Form 60, Defendants informally accepted this claim as compensable and referred Plaintiff to Doctors' Urgent Care for further treatment for Plaintiff's right hand injury.
10. Plaintiff began treating at Doctors' Urgent Care on August 13, 1998. Although the Plaintiff complained of right hand pain in the aforementioned three fingers, she did not report or complain of any other injuries, including a neck injury. Plaintiff was diagnosed with an abrasion of the dorsal PIP joint of the fifth finger with pain noted in the third through fifth fingers. Plaintiff was placed on light duty work with restrictions of no use of the right hand.
11. Plaintiff continued to treat with Doctors' Urgent Care on a conservative basis up until September 14, 1998, at which time Plaintiff was discharged and released to return to full-duty work without restrictions. Prior to this time, Plaintiff had been continued on light duty restrictions. Plaintiff was discharged from care with instructions to return if her symptoms increased. Plaintiff never returned to Doctors' Urgent Care. Defendants paid for all treatment provided by Doctors' Urgent Care.
12. While on light duty restrictions per Doctors' Urgent Care, Plaintiff performed light duty clerical work for Defendant. Plaintiff did so from August 14, 1998 through September 14, 1998, at which time she was released to return to regular duty work without restrictions. Plaintiff earned at or near the same weekly wages in her light duty position as she had prior to her hand *Page 5 
injury. On those occasions when Plaintiff did earn less than her average pre-injury weekly wages, it was due to Plaintiff missing work for personal reasons unrelated to her hand injury.
13. While Plaintiff was receiving authorized treatment at Doctors' Urgent Care, she sought treatment with Dr. Ali Ergun at Cumberland Chiropractic North. This treatment with Dr. Ergun was not authorized by Defendants and Plaintiff did not request for it to be authorized by the Industrial Commission.
14. Plaintiff first saw Dr. Ergun on August 28, 1998, at which time she complained of finger and hand pain. Although Plaintiff reported injuring her hand at work on August 12, 1998, she did not report injuring her neck when jerking her hand away from the fan as she testified at the hearing. Dr. Ergun's examination of Plaintiff's hand revealed that her hand injuries had completely healed. Dr. Ergun suspected that the Plaintiff's complaints of hand pain and numbness were coming from somewhere else and he ultimately diagnosed her with cervical radiculitis/neuritis with associated myalgias and carpal tunnel like symptoms. Dr. Ergun continued the light duty work restrictions in effect from Doctors' Urgent Care at that time.
15. Plaintiff continued to treat with Dr. Ergun on a conservative basis and saw him on two more occasions, the last being October 16, 1998. While continuing to treat with Dr. Ergun, Plaintiff never reported injuring her neck or any other body part other than her right hand at work on August 12, 1998. When Plaintiff saw Dr. Ergun on October 16, 1998, Plaintiff complained of continuing pain in her right hand as well as pain in her neck and upper back. Dr. Ergun was of the opinion that Plaintiff's hand pain was resulting from pressure on her cervical nerve roots. Although she was scheduled to continue treating with Dr. Ergun, Plaintiff did not return to see him until April 26, 2001, at which time she was referred back to Dr. Ergun by her attorney for a PPD evaluation. *Page 6 
16. After being released to full-duty work on September 14, 1998, Plaintiff went to work as a textiles production laborer at M. J. Soffe the next day. Plaintiff performed this job until November 12, 1998, at which time the employer did not require Plaintiff's temporary services any longer. M. J. Soffe was pleased with Plaintiff's performance and Plaintiff was physically and otherwise capable of performing this job. Plaintiff did not complain to Defendants that this position caused her any problems with her right hand whatsoever. Plaintiff earned the same or greater wages at this job as she had prior to her hand injury.
17. Plaintiff next went to work at MW Manufacturing on November 23, 1998. Plaintiff's job duties included inspecting windows and frames. Plaintiff was released from this assignment on December 1, 1998 because she worked at too slow of a pace. Plaintiff did not complain to Defendant that this job caused her any pain or other problems with her right hand either. Plaintiff earned the same or greater wages in this job as she had prior to her injury.
18. Plaintiff was then offered a temporary position as a banquet waitress/server by Defendants on December 1, 1998. Plaintiff refused this assignment due to alleged car trouble.
19. Thereafter, Plaintiff did not maintain any regular contact with Defendant regarding new job assignments. Defendant's company policy required employees to maintain regular contact with Defendant to obtain new job assignments once a temporary job had ended. Failure to do so would be deemed a voluntary resignation. Plaintiff was made aware of this policy upon being hired by Defendant and, in fact, signed a document acknowledging this policy when she was initially hired. When Plaintiff did not maintain any regular contact with Defendant, she was deemed to have voluntarily resigned her position with Defendant pursuant to company policy.
20. Plaintiff next worked for KC Corporation beginning sometime in February 1999. Plaintiff earned the same or greater wages in this job as she did prior to her hand injury. Plaintiff *Page 7 
worked for KC Corporation until sometime in June 1999, at which time she was hospitalized for a hysterectomy.
21. Plaintiff was then involved in an automobile accident on September 1, 1999. Plaintiff sustained injuries to her neck and back, and suffered from headaches as a result of this accident.
22. Plaintiff initially treated at Nelson Nelson Chiropractic for these injuries. She first sought treatment there on September 10, 1999. Plaintiff complained of neck pain with radiation of pain into her upper extremities and lower back pain with radiation of pain into her lower extremities. Plaintiff reported that she had been asymptomatic prior to this accident. Plaintiff continued to treat with Nelson Nelson Chiropractic for these injuries until December 16, 1999.
23. Plaintiff returned to work at KC Corporation in November 1999 and continued to work there until February 2000, at which time Plaintiff developed severe abdominal and pelvic pain to the point that she needed treatment again. Plaintiff has not worked since leaving KC Corporation in February 2000. Plaintiff has only looked for and/or applied for one job since that time.
24. Plaintiff underwent treatment for her abdominal and pelvic pain, including several procedures such as a colonoscopy and esophagogastroduodenoscopy performed at Moore Regional Hospital on March 22, 2000. Plaintiff was hospitalized at Moore Regional Hospital on March 28, 2000, at which time she underwent a laparoscopy, bi-lateral salpingo-oopherectomy and laparoscopic appendectomy. While hospitalized at Moore Regional Hospital, Plaintiff developed anxiety, dizziness and shortness of breath and was treated for the same while there. Plaintiff was discharged on March 30, 2000. *Page 8 
25. After being released from Moore Regional Hospital, Plaintiff subsequently sought treatment with various medical providers for injuries sustained in her automobile accident of September 1, 1999. Plaintiff treated at Pinehurst Surgical Clinic from April 28, 2000 through July 14, 2000 for lower back and leg pain. Plaintiff did not complain of any right hand or arm pain while treating at Pinehurst Surgical Clinic. On her last visit there on July 14, 2000, Plaintiff indicated that she was unable to work due to her lower back and leg pain.
26. Plaintiff also treated at Sandhills Orthopaedic and Spine Clinic on July 26, 2000 for lower back and leg pain as well. Plaintiff did not complain of any right hand or arm pain at that visit either. Plaintiff was seen by Dr. James Rice, who diagnosed Plaintiff with lumbar degenerative disc disease with superimposed strain from her automobile accident of September 1, 1999.
27. On June 6, 2000, Plaintiff sought treatment with Dr. Giridhar Chintalapudi at Sandhills Neurologists for chronic headaches and right upper extremity pain and numbness. Plaintiff indicated that she had suffered from chronic headaches for at least two years at that time. She further indicated that she had suffered from right upper extremity pain and numbness since 1997, when she was involved in an automobile accident. Plaintiff was diagnosed with mixed headache syndrome and right upper extremity pain. Dr. Chintalapudi ordered EMG/NCV studies to rule an entrapment syndrome versus cervical radiculopathy. These studies were performed on June 20, 2002 and returned normal with no evidence of an entrapment syndrome of any type nor any evidence of radiculopathy.
28. Plaintiff continued to treat with Dr. Chintalapudi intermittently through December 1, 2000. At that time, Plaintiff indicated that she was doing reasonably well, but continued to have pain in multiple joints and continued headaches, one to two times per week. Plaintiff also *Page 9 
complained of continued low back pain with increased pain upon prolonged standing and walking. Plaintiff did not specifically complain of any right hand or arm pain or numbness at this visit. Dr. Chintalapudi diagnosed Plaintiff with mixed headache syndrome, currently stable to the use of Imitrex and chronic low back pain. Dr. Chintalapudi recommended that Plaintiff continue use of Imitrex for her chronic headaches and to return to see him in three to four months time. There is no evidence that the Plaintiff has returned to Dr. Chintalapudi.
29. Upon recommendation and referral by her attorney, Plaintiff returned to see Dr. Ergun on April 26, 2001 for an evaluation of any permanent impairment. After an examination, Dr. Ergun diagnosed Plaintiff with an ulnar nerve lesion below the mid forearm. Dr. Ergun indicated that Plaintiff had reached maximum medical improvement with respect to her right arm and assigned a 14% permanent partial impairment to the right upper extremity based upon the American Medical Association guidelines.
30. Dr. Ergun testified that the Plaintiff's right hand and arm complaints and symptoms were due to a combination of a neck and ulnar nerve injury. Dr. Ergun testified further that Plaintiff's ulnar nerve injury originated in the forearm and could not have directly resulted from Plaintiff's hand being struck by the fan on August 12, 1998. Dr. Ergun also testified that Plaintiff's neck injury could not have directly resulted from the fan striking her hand either. Dr. Ergun testified that pain and numbness do not radiate up the arm from the point of origin/injury, but rather radiate down the arm from that point.
31. Dr. Ergun testified that if the Plaintiff had jerked her hand and arm away from the fan, as the Plaintiff testified, she could have injured her neck causing the symptoms of which she currently complains; however, Dr. Ergun testified that the Plaintiff did not report any such mechanism of injury to him. In fact, Dr. Ergun testified that such a mechanism of injury was *Page 10 
complete speculation and hypothesizing on his part. Dr. Ergun even admitted that any opinions regarding causation due to such a purported mechanism of injury would be complete speculation on his part since the Plaintiff did not report any such injury to him. Plaintiff did not describe any such mechanism of injury to anyone at Cutler Hammer or anyone with the Defendant. Plaintiff also did not describe any such mechanism of injury to any of her other medical providers either. Any opinion by Dr. Ergun regarding a causal relationship between Plaintiff's right hand and upper extremity pain and numbness is not based on competent, credible evidence, but rather conjecture and speculation. As such, any opinions given by Dr. Ergun regarding causation are given little weight by the Full Commission.
32. Plaintiff was evaluated by Glen D. Subin, M.D., of Mid-South Orthopaedic on March 3, 2004. Dr. Subin was of the opinion, and the Full Commission so finds:
 On my exam today the patient's symptoms are well out of proportion to the physical findings. She has inconsistent sharp/dull discrimination and nonphysiological grip strengths. Based on the above I do not think that her injury 5 years ago is related to her present symptomatology and there is evidence of significant symptom magnification in this patient.
33. Based upon the totality of the evidence, the Full Commission finds that Plaintiff's right hand and arm pain and numbness for which she currently claims medical and indemnity benefits is not causally related to her admittedly compensable work injury to her right hand on August 12, 1998. Any treatment Plaintiff has received in connection with that condition is not related to her work injury of August 12, 1998. Defendants have provided for all treatment reasonably related to Plaintiff's compensable right hand injury of August 12, 1998. *Page 11 
34. Plaintiff has not sustained any disability, temporary, permanent, partial or otherwise, as a result of the compensable injury sustained to her right hand on August 12, 1998. Any disability that Plaintiff may have is a result of other non-work related conditions or injuries.
35. Although Defendants did not file an Industrial Commission Form 60 immediately in this matter, they did accept this claim as compensable on a medical only basis and provided all necessary and related medical treatment for the Plaintiff. Plaintiff did not file her Industrial Commission Form 18 until May 11, 2000. On October 17, 2000, Defendants filed an Industrial Commission Form 60 admitting the compensability of Plaintiff's hand injury, but denying that she required any additional related medical treatment for that injury and that she had sustained any disability as a result of that injury. The Full Commission does not find sanctions to be warranted for any claimed violation of Industrial Commission Rule 607.
36. Defendants request attorney fees for Plaintiff's failure to enter into compromise and settlement agreements based on verbal agreements reached between the parties prior to the hearing of this matter. Plaintiff decided it was in her best interest to seek a decision in her case. The Full Commission finds that this decision by the Plaintiff was not unreasonable and, therefore, does not warrant sanctions against Plaintiff requiring payment of attorney fees to Defendants.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident to her right hand arising out of and in the course of her employment with Defendants on August 12, 1998. N.C. Gen. Stat. § 97-2(6). *Page 12 
2. Plaintiff has received all reasonably necessary medical treatment related to her right hand injury. Defendants have provided all such necessary and related medical treatment to the Plaintiff. N.C. Gen. Stat. §§ 97-25, 97-25.1.
3. Plaintiff has not met her burden of proving by a preponderance of the evidence that her current right arm and hand symptomatology for which she seeks additional medical compensation and benefits is causally related to her work injury of August 12, 1998. Click v. PilotFreight Carriers, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980);Wall by Wall v. North Hills Properties, Inc., 125 N.C. App. 357, 361,481 S.E.2d 303, 306 rev. denied, 346 N.C. 289, 487 S.E.2d 573 (1997). Even if Defendants had the burden of proof on this issue pursuant toParsons v. Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997), Defendants have proven by the greater weight of the evidence that Plaintiff's current symptomatology is not causally related to her compensable right hand injury of August 12, 1998. Any treatment received by Plaintiff other than that rendered by Doctors' Urgent Care is not causally related to her compensable right hand injury of August 12, 1998. Accordingly, Defendants are not responsible for the cost of any such treatment.
4. Plaintiff has not sustained any disability, temporary, permanent, partial, or otherwise, as a result of her compensable right hand injury of August 12, 1998. N.C. Gen. Stat. §§ 97-29, 97-30, and 97-31.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD *Page 13 
1. Plaintiff's claim for additional benefits for her compensable injury of August 12, 1998 is hereby DENIED. Plaintiff has received all workers' compensation benefits to which she is entitled to for this injury under the North Carolina Workers' Compensation Act. Plaintiff sustained no disability as a result of this injury. Defendants have provided all reasonably necessary medical treatment causally related to this injury and shall not be responsible for any treatment other than that rendered to the Plaintiff by Doctors' Urgent Care.
2. Each side shall pay its own costs.
 S/_________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_________________ BERNADINE S. BALLANCE COMMISSIONER
S/_________________ LAURA KRANIFELD MAVRETIC COMMISSIONER